Charles T. Major, J.
This is a claim to recover damages for the conscious pain, suffering and wrongful death of Frederick A. McCormick on June 15, 1959, resulting from a gunshot from a Smith & Wesson blue special revolver. The gun was discharged while in the hand of Vincent O. Ladd, a patrolman of the Niagara Frontier State Park Police Department, a State agency, whose officers’ authority extended throughout the State Park and generally throughout the City of Niagara Falls and the Town of Lewiston.
Limited letters of administration in the estate of Frederick A. McCormick were duly granted to George V. McCormick by the Surrogate of St. Lawrence County on June 24,1959. Notice of intention to file a claim herein was duly filed on August 21, 1959. This claim was filed on January 28,1960, and has not been assigned or submitted to any other court or tribunal for audit or determination.
About 12:20 in the morning of June 15,1959, the decedent was seen by Patrolman George Amsdill, of the Village of Lewiston Police Department, leaving a tavern on Fourth Street in that village and entering his 1954 Buick Sedan, hearing South Carolina registration No. X 2109. Patrolman Amsdill followed decedent’s vehicle on Fourth Street to Cayuga Street, to Niagara *807 Street, to Plain Street, to Fourth Street to Center Street, where decedent went through a “ STOP ” sign. The decedent then proceeded along Center Street at 70 miles per hour, according to Patrolman Amsdill’s testimony, to Portage Road and Creek Road Extension, thence along Lewiston Road at 90 miles per hour, going through a red traffic light at the intersection of Lewiston Road and TJppermount Road. When on Lewiston Road at the entrance to Niagara University, Patrolman Amsdill summoned aid of officers Vincent 0. Ladd and Matthew Krawezyk by blinking his lights and waving his arms for them to follow. Patrolman Ladd, the driver, and Krawezyk, as passenger, followed Amsdill’s and decedent’s cars.
Amsdill’s car was owned by him personally, but he was permitted to use it by the Village of Lewiston. It had a siren as did the car occupied by the Niagara Frontier policemen. At the intersection of Lewiston Road and Harrison Avenue in the City of Niagara Falls, Patrolman Amsdill forced decedent’s car to a stop, and when Patrolman Amsdill left his vehicle on his way to the decedent, the decedent put his car into reverse, backed up and turned into Harrison Avenue. At this time, the Park Police took over the chase and pursued decedent westerly on Harrison Avenue at a speed in excess of 50 miles per hour to Rapids Boulevard, where decedent ran a boulevard “ STOP ” sign. The decedent proceeded north on Rapids Boulevard, turned east to McKinley, where he ran a boulevard “ STOP ” sign, crossed Lewiston Road, and abandoned his vehicle in front of premises known as 1215 Norwood Avenue. Here he climbed out of the right side of his car and fled on foot across the field.
Officers Ladd and Krawezyk were informed by someone at 1215 Norwood Avenue that decedent ran behind a garage adjacent to the premises. Officer Ladd went around the left side of the garage, manually cocked his service revolver — ready to be fired, which was in one hand and a flashlight in the other. The officers testified that they shouted for decedent to come out, stating that they were police officers. It does not appear that at this time there was any reason known to the officers, carrying on the chase, as to why McCormick should be apprehended or arrested, and nothing that he did during the chase exceeded a traffic infraction, or, perhaps, a charge for reckless driving. It developed that the Carolina license on the automobile did not belong to decedent, but this was not known before, or at the time of the shooting.
Officer Krawezyk finally discovered decedent by the flashlight shining on his clothes, from his waist to his knees. His body was otherwise concealed, standing behind a snowball bush on the *808 west side of the garage, which he faced. At this point Ladd was about two feet to the left of Krawczyk and both patrolmen were approximately five feet from decedent with flashlights on. Krawczyk’s gun was not withdrawn from its holster at any time that night. Both patrolmen were about two feet from the edge of the bushes. The vacant lot adjoining the garage extended back about 100 feet from the curb. The grass was one and one-half feet high and the shrubbery was very wild and dense. There were other garages to the rear of the one at which decedent was discovered.
As the two patrolmen stood back of decedent, Krawczyk ordered him to come out with his hands up. Shortly thereafter, decedent made a partial turn and in so doing bumped against Ladd’s cocked revolver which pointed upwards at about 45 degrees. This caused the revolver to be discharged. The decedent fell to the ground and mumbled some words about being shot. The patrolmen then searched him and found no gun or weapon of any kind. They found he was shot through his back near his spine. They called an ambulance and had him removed to the Niagara Falls Memorial Hospital. He died about 1:22 a.m.
Krawczyk testified he did not hear Ladd’s gun go off. Patrolman Ladd had been exceptionally well trained in the hazards of, and use of guns, especially the type of double action revolver used by him. He knew it was a dangerous and hazardous weapon, requiring a very high degree of care on his part. He drew his revolver and manually cocked it immediately upon entering the premises and on reaching a point at least 80 feet from the bushes in which decedent was found. He walked over and around the rough terrain and through the deep grass and vegetation and came close to the decedent with it still cocked, and his finger on the trigger. He knew, or should have known, as would any prudent man, that if decedent were armed and intended to shoot the patrolmen, he had an opportunity to do so when the patrolmen presented themselves as targets by walking around the field with lighted flashlights. He knew, or should have known, that if the decedent came out of the bushes, he might fall when he stepped off the elevated ground on which he was standing, or trip over the stubble and vegetation, and the danger of his bumping into his gun. There was no reason for the presence of such gun or any feeling that decedent was armed or dangerous.
Negligence is the omission of proper care. Proper care is due precaution against a danger reasonably to be perceived. Patrolman Ladd did not take the proper care or precaution. He did *809 not act in the manner expected of a prudent man under similar circumstances. This is negligence, and this negligence is chargeable to the State of New York. This negligence is the proximate cause of the shooting of Frederick McCormick causing his conscious pain, suffering and wrongful death. Frederick McCormick was guilty of no contributory negligence.
Examinations by physicians and a post mortem were held, and showed that the bullet wound on his back was located about 2.5 centimeters to the left of the midline; 23 centimeters above the level of the coccyx and 43.5 inches above the heel. The site of entry of the bullet was approximately at the level of the first lumbar vertebra. The diameter of the puncture bullet wound was 8 millimeters. The bullet coursed upwards and medially from the site of the entry anteriorly at an angle of about 5 degrees, and passed through the left plural cavity at the attachment of the 11th left rib, which it fractured. Then it continued between the 3rd and 4th ribs upwards and slightly anteriorly, through the lower and upper lobes of the left lung, fracturing the left third rib 12 centimeters distal to the left lateral border of the spinal column. The path of the bullet then continued upwards laterally and slightly anteriorly to the site of a subcutaneous swelling on the left shoulder, approximately at the acromioclavicular junction, or slightly anterior to it. As a result of the bullet wound, and the course it took, the decedent suffered a massive hemothorax of the left plural cavity with an aggregate amount of 2,200 cubic centimeters of fluid blood and blood clot which was the immediate cause of his death. He suffered severe and excruciating pain for a short time before becoming unconscious.
At the time of his death Frederick McCormick was single, 25 years of age, rugged, healthy, hard-working, loyal to his family, with a life expectancy of 42.12 years. Gladys V. McCormick, his mother, was born July 10, 1909 and at the time of her son’s death was 49 years of age and had a life expectancy of 22.12 years. His father, George V. McCormick, was born September 15, 1908 and at the time of his son’s death was 50 years of age and had a life expectancy of 21.37 years.
The decedent was 16 years of age at the end of his school year in 1950 and became self-supporting. From July 1, 1951, until his death, he assisted in the support and welfare of his parents and other members of his family to whom he made substantial contributions. He made gifts of household furniture, appliances, clothing and other items in addition to a weekly allowance, when employed, to his family. During a period of three years, just prior to his death, his contributions amounted to around the sum *810 of $4,000 in money and personal property. Decedent’s parents, Gladys V. McCormick and George V. McCormick, constitute the sole next of kin entitled to recover for the pecuniary damages for injuries suffered from conscious pain and suffering and wrongful death of the decedent.
The claimant is awarded the sum of $24,000 as compensation for the pecuniary injuries resulting from the decedent’s death, and including funeral expenses, medical aid and attention incident to the injury causing death, with interest thereon as allowed by law. (Decedent Estate Law, § 132.) The Clerk will compute interest.
The claimant is also awarded the sum of $1,000 for the conscious pain and suffering of decedent.